**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAFAWN ANTHONY, | ) | CASE NO. 5:25-cv-2437 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| CITY OF AKRON, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This is a civil rights case in which plaintiff Lafawn Anthony ("Anthony") alleges that the City of Akron, the Akron Police Department, the Akron Chief of Police, several unknown and unidentified Akron police officers, and an Akron municipal court magistrate judge violated her rights as guaranteed under the federal and Ohio constitutions. (*See generally* Doc. No. 1-1 (Complaint).) Before the Court is defendants' motion for judgment on the pleadings. (Doc. No. 7 (Motion).) The motion is unopposed. For the reasons set forth herein, the motion is **GRANTED in part**.

## I.      BACKGROUND

Anthony, who at all times has been represented by counsel, pleads very few facts in her complaint. Anthony alleges that on April 6, 2025, she was arrested by one or more officers of the Akron Police Department for an alleged traffic offense.[1] (Doc. No. 1-1 (Complaint), at 4.) She

---

[1] Defendants maintain that Anthony was arrested and charged with an improper lane change and failing to stop at a stop sign. (Doc. No. 3 (Answer), at 4 (All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.).)

claims that police officers subsequently searched her and her vehicle. (*Id.*) In the process, "a certain item of personal property was seized" and Anthony was provided a receipt documenting the seizure by the Akron Police Department. (*Id.* at 2, 4.) The complaint does not specify what property was taken. Finally, Anthony avers that she was ordered from the vehicle and "egregiously shackled." (*Id.* at 5.) She contends that she and her unnamed passenger were subsequently detained for an unspecified period of time. (*See id.* at 8, 12.) She also represents that the police officers arrested her at gunpoint. (*Id.* at 14.)

Following this encounter with police, Anthony was charged in Akron Municipal Court with a misdemeanor traffic violation. (*See* Doc. No. 7, at 12.) The case against Anthony was eventually dismissed. (Doc. No. 3 (Answer), at 5; *see* Doc. No. 1-1, at 6 ¶ (N).) Anthony alleges in conclusory fashion that the magistrate judge presiding over the case, Judge Joseph Mittica ("Judge Mittica"), "was conferring behind [Anthony's] back[] with unknown sources" and acted "arbitrarily," "illegally," and "unethically" in "abruptly den[ying] [Anthony's motion to suppress] after refusing [Anthony] the right to respond to it."[2] (Doc. No. 1-1, at 9.)

On October 6, 2025, Anthony filed the instant action in the Summit County Court of Common Pleas against the City of Akron, the Akron Police Department, Chief of Police Brian Harding ("Chief Harding"), "Various Unknown Law Enforcement Officers of the Akron Police Department" ("John Doe Officers"), and Judge Mittica (collectively, "defendants"). (*See generally id.*)

Despite the complaint purporting to allege four causes of action, it is not entirely apparent to the Court what claims Anthony asserts against defendants, nor which "causes of action" apply

---

[2] It is not clear to the Court why Anthony would be entitled to file a response to her own motion.

to which defendants. (*See id.* at 4 ¶ (A) (naming defendants as "likewise culpable").) Nevertheless, Anthony appears to bring claims under 42 U.S.C. § 1983, a *Monell* claim, an Ohio constitutional claim, a state law statutory claim, a replevin claim, and state law tort claims. Anthony seeks an unspecified amount of compensatory damages, punitive damages "of at least One Million Dollars," and attorney's fees and costs. (*Id.* at 6 ¶ (K), 15.)

Defendants removed this action to federal court on November 10, 2025 (Doc. No. 1 (Notice of Removal) and filed their answer on November 14, 2025. (Doc. No. 3.) On December 29, 2025, defendants filed the instant motion seeking judgment on the pleadings. (Doc. No. 7.) Despite the Court granting Anthony two extensions (Order [non-document], 01/02/2026; Order [non-document], 02/25/2026), she did not file a response, and the time for doing so has passed.[3]

## II.    LEGAL STANDARD

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'"

---

[3] Anthony previously attempted to voluntarily dismiss this action after defendants had filed their answer, but she did so improperly. (*See* Doc. No. 13 (Plaintiff's Notice of Voluntary Dismissal).) Because she did not comply with the requirements of Fed. R. Civ. P. 41(a)(1)(A), the Court denied her request to dismiss the case and indicated that "[i]f the plaintiff wishes to dismiss this action, she should either file a stipulation to a notice of dismissal signed by all parties who have appeared pursuant to Rule 41(a)(1)(A)(ii) or file a motion to dismiss pursuant to Rule 41(a)(2)." (Doc. No. 14 (Order).) It has been 41 days since the Court denied Anthony's request to dismiss the case and invited her to file an appropriate form of voluntary dismissal, but she has failed to do so, requiring the Court to rule on defendants' pending motion for judgment on the pleading.

*Id.* (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

In considering a Rule 12(c) motion, the allegations in the complaint are the Court's primary focus. "To survive a motion to dismiss [or judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks and citations omitted) (emphasis in original). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

In ruling on a Rule 12(c) motion, the Court considers all available pleadings and may also consider: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek*

*v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

## III.    DISCUSSION

Defendants aver that Anthony's complaint fails to plead any viable claim. (Doc. No. 7, at 14.) "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

Anthony's complaint is difficult to parse; it intermingles limited factual allegations with conclusory statements,[4] incoherent rants,[5] and vituperation.[6] In addition, the complaint primarily relies on what is best characterized as "group pleading," where the acts of the defendants are lumped together in each claim and no attempt is made to distinguish the conduct of any individual actor.

---

[4] *See, e.g.*, Doc. No. 1-1, at 4 ¶ (B) ("[Plaintiff] was arrested (indeed illegally) without probable case [sic]."), 5 ¶ (C) ("The original stop, and for sure the actions taken by various officers toward the Plaintiff, both . . . were indefensible."), 6 ¶ (K) ("[Defendants' confiscation of plaintiff's property was] willful and malicious."), 8 ("And, in addition it is also clear that [the police officers] were mean spirited."), 13 ("[G]iven the [plaintiff] was transported to a lockup facility elsewhere in the city – for clearly unorthodox reasons, it follows [that the police officers'] doing so cannot be defended. For sure this move cannot be defended. Indeed, in law, logic, or even common sense.").

[5] *See, e.g.*, *id.* at 6 ¶ (J) ("That here we only seek to be compensated for the wrongs visited on me in the wake of conduct that violated, not only, [sic] my reputation, my sanity and my reputation [sic]."), *id.* ¶ (L) ("The fact that none of [the acts of the police] can be defended only amplifies the egregiousness of the conduct of these poorly trained officers."), 7 ("Well given that reality, which clearly cannot be defended, not only shows these officers were not merely on frolics of their own, they were on a mission. Indeed, this was clearly more of a move than a simple mission. It was an all-out effort to inflict other cruel and unusual punishment, which is unacceptable in the real world – the one we (those of us who do not live in Akron) enjoy."), 11 ("[Judge Mittica] also can be assailed for being dishonest – a cardinal sin.").

[6] *See, e.g.*, *id.*, at 2–3 ("Counsel . . . challenges anyone who says these monies were originally seized from her by the Federal Government is lying."), 3 ("We have said that one of [the defendants] has to be lying."), *id.* ("They have to '[s***] or get off the pot.'"), *id.* ("We call it a charade. It was indulged in by these maunderers who committed atrocious acts."); 8 ("Indeed, at all times these officers continued their outrageous rampage, which was totally unwarranted."), 9 ("Thus, it is only fair that these, arguably, savages should be further assessed for these atrocities, as well.").

As a general matter, courts within the Sixth Circuit do not permit "group pleading" outside of certain fraud claims. Rather, a complaint must assert that a defendant was personally involved in the alleged deprivation of a plaintiff's rights. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2022) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983)); *see, e.g., Mhoon v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3:16-cv-1751, 2016 WL 6250379, at *3 (M.D. Tenn. Oct. 26, 2016) (finding the generic use of "defendants," without specifying which defendants were involved in the deprivation of federal rights, failed to state a claim); *Rodriguez v. Providence Cmty. Corrs., Inc.*, 191 F. Supp. 3d 758, 773 (M.D. Tenn. 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim.").

Despite Anthony's reliance on group pleading, it appears that Anthony attempts to bring claims against Chief Harding, the Akron Police Department, the City of Akron, Judge Mittica, and the John Doe Officers. The Court addresses the claims against each of the defendants in turn.

### A. Chief Harding

Anthony purports to bring claims against Chief Harding. (*See* Doc. No. 1-1, at 1.) But, besides being referenced in the case caption, Anthony makes no further mention of Chief Harding in the body of the complaint. Because Anthony has failed to explain how Chief Harding caused her injuries, her claims against him warrant dismissal. *See Redondo Waste Sys., Inc. v. Lopez-Freytes*, 659 F.3d 136, 140 (1st Cir. 2011) (defendant named in case caption but not mentioned in body of complaint "fails the [*Iqbal*] plausibility test spectacularly").

### B. Akron Police Department

It is well settled that police departments are not *sui juris*, meaning they are not separate legal entities under Ohio law that can sue or be sued. *Wagner v. City of Canton*, No. 5:19-cv-377,

2020 WL 1514551, at *1 n.2 (N.D. Ohio Mar. 30, 2020) (finding Canton Police Department is not *sui juris*). Rather, "[t]hey are merely sub-units of the municipalities they serve" (in this case the City of Akron) and they do not have a separate legal existence. *See Deir v. Lake Cnty.*, No. 1:12-cv-110, 2012 WL 1142467, at *3 (N.D. Ohio Apr. 4, 2012); *Lawson v. City of Youngstown*, 912 F. Supp. 2d 527, 531 (N.D. Ohio 2012) (collecting cases). Because the Akron Police Department lacks capacity to be sued, Anthony's claims against it must be dismissed.

### C. City of Akron

Anthony attempts to bring federal and state law claims against the City of Akron. (*See generally* Doc. No. 1-1.) But neither of her federal or state law allegations are sufficient to state a claim.

#### i. Federal Law Claims

Beginning with the claims under federal law, the Court construes Anthony's allegations of constitutional violations as purporting to assert a claim of municipal liability claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).[7]

To successfully assert a *Monell* claim, a plaintiff must adequately allege facts sufficient to establish: (1) "a clear and persistent" pattern of unconstitutional conduct by municipal employees; (2) the municipality's "notice or constructive notice" of the unconstitutional conduct; (3) the municipality's "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4)

---

[7] To the extent Anthony claims that the City of Akron's liability is premised on a theory of *respondeat superior*, the Court notes that it is well established that "a municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

that the policy of inaction was the "moving force" of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee. *D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014) (citing *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996)). "To satisfy the *Monell* requirements, a plaintiff must identify the policy, connect the policy to the [City of Akron] itself and show that the particular injury was incurred because of the execution of that policy." *Myers v. Boardman Loc. Sch. Dist. Bd. of Educ.*, No. 4:21-cv-2048, 2022 WL 17307806, at *4 (N.D. Ohio Nov. 28, 2022) (quotation marks and citations omitted).

Without any factual enhancement, Anthony appears to claim that the City of Akron failed to properly train the John Doe Officers who were involved in stopping and arresting her. (*See* Doc. No. 1-1, at 6 § (L).) But as the Supreme Court has noted, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (citation omitted). Liability can occur only where "such inadequate training can justifiably be said to represent 'city policy.'" *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1980). To establish failure to train, a plaintiff must allege and prove "prior instances of unconstitutional conduct demonstrating that the [City of Akron] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quotation marks and citation omitted); *see M.T. v. Benton-Carrol-Salem Loc. Sch. Dist.*, No. 16-cv-2552, 2017 WL 2119346, at *3 (N.D. Ohio May 16, 2017). The complaint here fails in this regard, offering nothing more than conclusory, formulaic allegations. *Twombly*, 550 U.S. at 555.

Anthony pleads *no* facts showing prior instances of similar misconduct that would have put the City of Akron on notice as to any deficiency in training or supervision. Anthony merely claims in conclusory fashion that "the egregiousness of the conduct of these poorly trained officers" cannot be defended. (Doc. No. 1-1, at 6 § (L).) But she fails to provide any facts suggesting any inadequate training, nor does she attempt to link the alleged poor training to anything that could justifiably represent city policy. Because Anthony has not pleaded sufficient facts suggesting that the City of Akron systemically failed to train its police officers, she has failed to plausibly state a *Monell* claim.

### ii. State Law Claims

Section 2744 of the Ohio Revised Code extends to municipalities immunity from tort liability for governmental and propriety functions. Ohio Rev. Code § 2744.02(A)(1) ("Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."); *Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007). It is well settled that "government functions" include the operations of law enforcement. *See* § 2744.01(C)(2)(a); *Harris v. Sutton*, 918 N.E.2d 181, 185 (Ohio Ct. App. 2009).

There are, however, certain exceptions to the general grant of immunity spelled out in the statute. Specifically, immunity is not available to a municipality where: (1) injury or damage is caused by a municipal employee's negligent operation of a motor vehicle; (2) the losses are due to the negligent performance of employees with respect to proprietary functions of a political subdivision; (3) damages are the result of a municipality's negligent failure to keep public roads

in repair; (4) damages are the result of a physical defect on the grounds of public buildings used for government functions; and (5) civil liability is expressly imposed by another provision of the Ohio Revised Code. Ohio. Rev. Code § 2744.02(B). Immunity is also not available to a municipality for claims based upon alleged violations of federal statutes and the United States Constitution. Ohio. Rev. Code § 2744.09(E); *Chaney v. Norwood*, 937 N.E.2d 634, 636 (Ohio Ct. App. 2010).

Here, there is no doubt that the City of Akron qualifies for immunity under Ohio Rev. Code § 2744.02(A)(1) as the John Doe Officers were engaged in the governmental function of police activities at the time of Anthony's arrest. Further, the minimal facts Anthony pleads indicate that no exceptions would apply. Accordingly, the City of Akron is immune from liability.

Because the complaint primarily consists of group pleading, it is not entirely clear what state law claims she intended to assert against the City of Akron. It appears that Anthony brings a claim for failure to follow Ohio Rev. Code § 2981.05 (describing procedure for civil forfeiture actions) (Doc. No. 1-1, at 5 § (E)), a replevin claim (*see id.* at 2), and a tort claim for "physical inconvenience, physical discomfort, loss of time, mental suffering, embarrassment, humiliation, disgrace and injury to reputation" as a result of her arrest and detention (*id.* at 10). But these claims are all barred by the City of Akron's Ohio Rev. Code § 2744 immunity. Courts routinely apply Ohio Rev. Code § 2744 to find immunity from Ohio Rev. Code § 2981 claims, *see, e.g., Conaway v. Mt. Orab*, No. CA2023-03-044, 2024 WL 81515, at *4 (Ohio Ct. App. Jan. 8, 2024); *Camargo v. Toledo*, No. L-23-1056, 2024 WL 513724, at *5 (Ohio Ct. App. Feb. 9, 2024), replevin claims,[8]

---

[8] The Court recognizes that there is conflicting authority regarding whether Ohio Rev. Code § 2744 can provide immunity from replevin claims. *See Brown v. Cincinnati*, 162 N.E.3d 1274, 1279 (Ohio Ct. App. 2020) (declining to extend Ohio Rev. Code § 2744 immunity to replevin claim). But even if the Court were to find that the City of Akron

10

*see, e.g., Findlay v. Martens*, No. 5-22-05, 2022 WL 17088928, at *6–7 (Ohio Ct. App. Nov. 21, 2022), and tort claims, *see, e.g., Gammarino v. Sycamore Twp., OH*, No. 24-3149, 2025 WL 674222, at *5 (6th Cir. Mar. 3, 2025); *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 744 (N.D. Ohio 2008), that do not fall within the narrow exceptions of Ohio. Rev. Code § 2744.02(B). Accordingly, Anthony fails to state any state law claims against the City of Akron.

### D. Judge Mittica

"It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) (citation and quotation marks omitted).[9] Judicial officers are generally entitled to absolute immunity from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (collecting cases); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (collecting cases). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115. This absolute immunity may be overcome only when: (1) the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) the conduct alleged, although judicial in nature, is taken in complete absence of all subject

---

does not have immunity from the replevin claim, Anthony's claim still warrants dismissal because it fails to comply with the formal requirements of Ohio Rev. Code § 2737.03 (establishing requirements for claims seeking the recovery of personal property). In particular, the complaint, among other deficiencies, fails to provide a "description of the specified property claimed and the approximate value[,]" the "specific interest of the movant in the property[,]" and a statement indicating that the property was not "taken for a tax, assessment, or fine[,]" as required by Ohio Rev. Code § 2737.03.

[9] Ohio law expressly recognizes the doctrine of judicial immunity. *See* Ohio Rev. Code § 2744.03(A)(7) ("[A] judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.").

matter jurisdiction of the court over which he or she presides. *Mireles*, 502 U.S. at 11–12; *Barnes*, 105 F.3d at 1116.

A judge will not be deprived of immunity even if the action at issue was performed in error, done maliciously, or performed in excess of his or her authority. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984) (merely acting in excess of authority does not preclude immunity). And an allegation of conspiracy is insufficient to defeat judicial immunity. *See Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("[A]llegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest, or outright malevolence." (citation omitted)).

Here, Anthony does little more than express disagreement with Judge Mittica's rulings and decisions in her case. She alleges that Judge Mittica refused to grant her a deadline extension, denied her motion to suppress, and ultimately dismissed the traffic case against her. (*See* Doc. No. 1-1, at 9, 11.) These allegations indisputably relate to Judge Mittica's performance of core judicial functions. Anthony's unsupported allegations that these actions were taken "arbitrarily" and "irrationally" (*id.*) do not take them outside the protection of judicial immunity.

Anthony has supplied no factual allegations that would overcome Judge Mittica's judicial immunity. She does not allege facts that, if believed, would establish that Judge Mittica's conduct was extrajudicial or that it was taken in complete absence of all subject matter jurisdiction. Nor can she. The challenged conduct—the decision to grant or deny motions or to dismiss cases—is squarely judicial. *See Mirales*, 502 U.S. at 12 ("'[W]hether an act by a judge is a "judicial" one relate[s] to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge,

and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.'" (quoting *Stump*, 435 U.S. at 362)). And Judge Mittica acted with proper subject matter jurisdiction when addressing plaintiff's alleged traffic violations. *See* Ohio Rev. Code § 1901.20(A)(1) (conferring upon the municipal court jurisdiction to hear misdemeanor cases committed within its territory, including exclusive jurisdiction over civil actions concerning a violation of state traffic law or a municipal traffic ordinance). Anthony's unsubstantiated accusation that "[t]he [d]efendants . . . are conspirators" (Doc. No. 1-1, at 4) is likewise incapable of overcoming Judge Mittica's judicial immunity. *See Ashelman*, 793 F.2d at 1078. Anthony's claims against Judge Mittica therefore warrant dismissal.

### E. John Doe Officers

Having dismissed the claims against Chief Harding, the Akron Police Department, the City of Akron, and Judge Mittica, the only remaining claims are against the John Doe Officers.

Where a plaintiff is temporarily unable to ascertain a defendant's actual name, the plaintiff may file a complaint that names the unknown defendant as "John Doe." "However, simply identifying an unknown defendant in the complaint by the pseudonym of John Doe . . . is not enough to commence a civil action against that unknown defendant." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *5 (E.D. Tenn. Nov. 4, 2009) (citing *Bufalino v. Michigan Bell Tel. Co.,* 404 F.2d 1023, 1028 (6th Cir. 1968)). While John Doe pleadings may be an acceptable practice if the John Doe is an actual person or entity that can be identified through discovery and served accordingly, "a plaintiff suing such defendants must comply with Fed. R. Civ. P. 4(m) by serving the 'John Does' within the time specified therein." *Epperson v. City of Humboldt*, 183 F. Supp. 3d 897, 908 (W.D. Tenn. 2016) (citing *Shepherd v. Voitus*, No. 4:14-cv-

866, 2015 WL 4599609, at *1 (N.D. Ohio July 29, 2015)); *see also Searcy v. Cnty. of Oakland*, 735 F. Supp. 2d 759, 771 (E.D. Mich. 2010) ("Rule 4(m) applies equally to . . . pseudonymous defendants." (citing *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 345–46 (6th Cir. 2007)).

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). For cases removed to federal court, Rule 4(m) permits service within 90 days after the date of removal. *Neville v. Salvation Army Nat'l Corp.*, No. 3:25-cv-227, 2026 WL 687952, at *6 (W.D. Ky. Mar. 11, 2026) (citing *Cowen v. Am. Med. Sys., Inc.*, 411 F. Supp. 2d 717, 721 (E.D. Mich. 2006)). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. *Botello v. Tennessee Dep't of Correction*, No. 3:18-cv-549, 2020 WL 3422218, at *3 (M.D. Tenn. Apr. 6, 2020), *report and recommendation adopted*, 2020 WL 3412345 (M.D. Tenn. June 22, 2020).

Here, Anthony's complaint was filed on October 6, 2025, and this case was removed to federal court on November 10, 2025. (*See generally* Doc. No. 1.) Anthony has not served the John Doe Officers within the 90-day time limit prescribed by Rule 4(m) (*see id.* ¶ 2), nor has she requested an extension of the service deadline. Courts routinely dismiss claims against John Doe defendants without prejudice when the plaintiff fails to identify and serve them in accordance with Rule 4(m). *See, e.g., Epperson*, 183 F. Supp. 3d at 908; *Reed-Baglia v. Cnty. of Summit*, No. 5:09-cv-352, 2010 WL 723761, at *5 (N.D. Ohio Feb. 24, 2010); *Boggs v. Corbin City Police*, No. 6:07-369, 2008 WL 718397, at *1 (E.D. Ky. Mar. 14, 2008); *Shulman v. Amazon.com.kydc, LLC*, No.

14

13-5, 2015 WL 1782636, at *5 n.6 (E.D. Ky. Apr. 20, 2015), *aff'd sub nom. Shulman v. Amazon.com.kydc, Inc.*, No. 15-6211, 2017 WL 5135522 (6th Cir. Jan. 11, 2017); *Dubose v. City of Morristown*, No. 2:07-cv-115, 2009 WL 1766008, at *6 (E.D. Tenn. June 22, 2009); *Ewing v. Wayne Cnty. Sherriff*, No. 2:22-cv-11453, 2023 WL 8246196, at *2 (E.D. Mich. Oct. 12, 2023), *report and recommendation adopted*, 2023 WL 8238959 (E.D. Mich. Nov. 28, 2023).

Anthony is hereby put on notice that her failure to meet the requirements of Rule 4(m) may result in dismissal of her claims against the John Doe Officers. She is ordered to show cause within 14 days as to why these claims should not be dismissed without prejudice for failure to effectuate service.

## IV.    DECORUM IN FEDERAL COURT

The Court is disturbed by the abusive language and tone directed toward the parties in plaintiff's pleading. As the Court has outlined above, the complaint is rife with personal attacks upon defendants and others.

"Legal pleadings are no place for demeaning and derogatory comments, [and] personal insults[.] They bring public scorn on the legal profession and the judicial system." *Food Lion, LLC v. Dean Foods Co.*, No. 2:07-cv-188, 2016 WL 806076, at *1 (E.D. Tenn. Jan. 11, 2016); *see Mills v. City of Barbourville*, 389 F.3d 568, 581 (6th Cir. 2004) ("Ad hominem attacks on parties have no place in a judicial proceeding."). The complaint offers opinions of defendants and their associates untethered to the facts of the case and laced with abusive and charged language. Indeed, the complaint describes defendants as "dolts" (Doc. No. 1-1, at 14), refers to the John Doe Officers as "savages" who should be assessed for their "atrocities" (*id.* at 9), and labels Judge Mittica a "meddler" "who was conferring behind [plaintiff's] back with unknown sources." (*Id.*) The

15

pleading suggests that defendants must "'[s***] or get off the pot'" and charges them with "[being on a mission] to inflict other cruel and unusual punishment[.]" (*Id.* at 3, 7.) The complaint also appears to draw parallels between defendants and Whitey Bulger, Danny Greene, and Henry Lee Lucas.[10] (*Id.* at 10, 14.)

As a licensed attorney, plaintiff's counsel has a duty to ensure that his client's pleadings are free of such offensive and abusive language. *See Deters v. Barrett*, No. 1:25-cv-640, 2026 WL 157676, at *13 (S.D. Ohio Jan. 16, 2026) ("No matter how strongly plaintiff believes that his former clients have been wronged[] . . . abusive language has no place in any litigation."). Plaintiff's counsel is admonished for the use of inappropriate and abusive language in the complaint.

## V.     CONCLUSION

With many words, Anthony states very little. After navigating plaintiff's abrasive and convoluted complaint, the Court **GRANTS in part** defendants' motion for judgment on the pleadings as follows:

(i)     Anthony's claims against Chief Harding are **DISMISSED with prejudice** for failure to state a claim;

(ii)    Anthony's claims against the Akron Police Department are **DISMISSED with prejudice** for failure to state a claim;

(iii)   Anthony's claims against the City of Akron are **DISMISSED with prejudice** for failure to state a claim; and

---

[10] The complaint references these figures without explanation. Whitey Bulger was an American crime boss who was listed as one of the Federal Bureau of Investigation's top ten most-wanted fugitives. *See* John M. Cunningham & Dick Lehr, Whitey Bulger, Encyc. Brittanica (last updated Mar. 18, 2026), https://www.britannica.com/biography/Whitey-Bulger. Danny Greene was a Cleveland-based mobster and racketeer. *See* Danny Greene, Wikipedia, https://en.wikipedia.org/wiki/Danny_Greene (last visited Mar. 19, 2026). Henry Lee Lucas was a serial killer. *See* Henry Lee Lucas, Wikipedia, https://en.wikipedia.org/wiki/Henry_Lee_Lucas (last visited Mar. 19, 2026).

(iv)    Anthony's claims against Judge Mittica are **DISMISSED with prejudice** for failure to state a claim.

Because Anthony never moved for leave to file an amended complaint, nor did she file a response to defendants' motion, the Court in its discretion concludes that dismissal with prejudice of the above-mentioned claims is warranted. *See Crosby v. Twitter, Inc.*, 921 F.3d 617, 627–28 (6th Cir. 2019) (finding that the district court did not abuse its discretion by dismissing the amended complaint with prejudice when plaintiffs did not file a proposed second amended complaint or seek leave to do so). Accordingly, because no claims remain asserted against Chief Harding, the Akron Police Department, the City of Akron, and Judge Mittica, they are **DISMISSED** from this case.

The only remaining claims in this case are against the John Doe Officers. Anthony, however, has failed to comply with the requirements of Rule 4(m) as it relates to these defendants. Anthony is hereby ordered to show cause within 14 days as to why the claims against the John Doe Officers should not be dismissed without prejudice for failure to effectuate service. Should Anthony fail to show cause, the Court will dismiss the claims against the John Doe Officers without prejudice and close the case.

**IT IS SO ORDERED**.

Dated: April 20, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**